Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 268-7080
spencer@spencersheehan.com

United States District Court
Eastern District of New York                                    1:20-cv-05684

Giovanna Smith, individually and on behalf
of all others similarly situated,

                              Plaintiff,

            - against -                                        Complaint

Abbott Laboratories Inc.,

                              Defendant

     Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining

to plaintiff, which are based on personal knowledge:

     1.    Abbott Laboratories Inc. ("defendant") manufactures, distributes, markets, labels and

sells Similac Go & Grow Toddler Drink, a milk-based powder purporting to meet, and be

necessary for, the nutritional needs of children between 12 and 36 months ("Toddler Drink," or

"Product").

     2.    Feeding infants and toddlers, including the transition from only breastfeeding or

infant formula with iron to the regular family diet is "critical for establishing healthy dietary

preferences and preventing obesity in children."[1]

     3.    The American Academy of Pediatrics (AAP) recommends "exclusive breastfeeding

for the first 6 months of life with the addition of complementary foods and the continuation of

---

[1] Jennifer L. Harris, and Jennifer L. Pomeranz, "Infant formula and toddler milk marketing: opportunities to address harmful practices and improve young children's diets." Nutrition Reviews (2020).

breastfeeding until at least 12 months of age."[2]

4.    After 12 months, experts recommend whole plain cow's milk, water and healthy foods as part of balanced diet.

5.    Infant formula is defined as "a food which purports to be or is represented for special dietary use for infants [0-12 months] by reason of its simulation of human milk or its suitability as a complete or partial substitute for human milk." 21 C.F.R. § 106.3.

6.    Since 2003, rates of breastfeeding have increased significantly, resulting in a decrease in sales of infant formula.

7.    To make up for declining sales of infant formulas, companies have introduced products marketed as "transition formulas," "follow-on formulas," "weaning formulas," "toddler milks" and "growing-up milks" ("GUMs") (collectively, "Transition Formulas") to children older than twelve (12) months but less than 3 years old.[3]

8.    U.S. Nielsen data shows that advertising spending on transition formula quadrupled between 2003 and 2015, with sales increasing almost threefold during this period.

9.    These products are practically identical to infant formula in that they are based on milk powder with added nutrients.

10.    Transition formulas use a statement of identity that uses the words infant and toddler interchangeably, even though the two groups have different dietary needs.

11.    The labels of the infant and transition formula items share common color schemes, fonts, statements and graphics.

---

[2] Jennifer L. Pomeranz, Maria J. Romo Palafox, and Jennifer L. Harris. "Toddler drinks, formulas, and milks: Labeling practices and policy implications." Preventive medicine 109 (2018): 11-16 (citing American Academy of Pediatrics (AAP) Committee on Nutrition and World Health Organization (WHO) findings).
[3] *Id*.

12.    For instance, Defendant's infant formula product is identified as "Infant Formula with Iron" and "Powder, Milk-Based" ("Infant Formula Product").



13.    The "Go & Grow" Product is "Toddler Drink" and "Milk-Based Powder."



14.    The name "Toddler Drink, Milk-Based Powder" is deceptive and misleading because it is confusingly similar to the name of "Infant Formula with Iron, Powder, Milk-Based."



15.    "Toddler Drink, Milk-Based Powder" does not state what it is in a way that distinguishes it from different foods such as the Infant Formula Product. 21 C.F.R. § 102.5(a).

16.    The absence of the term "Iron" from the Toddler Drink's statement of identity is insufficient to distinguish the Products because the front panel prominently references spinach and iron, two vegetables known to be high in iron, as part of its OptiGRO graphic.



VITAMIN E like that found in BROCCOLI for DEVELOPMENT

LUTEIN like that found in SPINACH for EYES

17.    The Transition Formula Product has similar statements, graphics, color patterns, fonts and labeling design to the Infant Formula Product.

| Infant Formula with Iron | Toddler Drink |
|---|---|
| Powder, Milk-Based | Milk-Based Powder |
| 0 – 12 Months | 12 – 36 Months (previously 12 – 24 Months) |
| For complete nutrition & advanced comfort | Go & Grow |
| Complete Nutrition For Your Baby's First Year | |
| OptiGRO | OptiGRO |
| Brain Nourishing – DHA | DHA like that found in FISH for BRAIN |
| Eye Health – LUTEIN | LUTEIN like that found in SPINACH for EYES |
| Growth & Development – VITAMIN E | VITAMIN E like that found in BROCCOLI for DEVELOPMENT |

18.    The labeling of the Toddler Drink and Infant Formula gives caregivers of children of the targeted age group the false impression that the Toddler Drink is the appropriate "next step" for a child's nutritional needs after the first year of life.

19.    The labeling of the Toddler Drink and Infant Formula gives caregivers of children of the targeted age group the false impression that infants and young toddlers have identical nutrient requirements.

20.    Contrary to the recommended nutritional needs of children in this age range, the Product contains four grams of added sugar (in a four-ounce serving).[4]

| Nutrition Facts/Datos de Nutrición | | | |
|---|---|---|---|
| 68 servings per container/68 porciones por envase | | | |
| **Serving size** | **2 tablespoons (15 g) powder** | | |
| **Tamaño de la porción** | **2 cucharadas (15 g) de polvo** | | |
| Amount per serving/Cantidad por porción | | | |
| **Calories/Calorías** | | | **70** |
| | % DV*/% de VD* | | % DV*/% de VD* |
| **Total Fat/Grasa total** 4 g | 10% | **Sodium/Sodio** 25 mg | 2% |
| Saturated Fat/Grasas saturadas 1.5 g | 13% | **Total Carbohydrate/Carbohidratos totales** 7 g | 5% |
| *Trans* Fat/Grasas *trans* 0 g | | Dietary Fiber/Fibra dietaria 0 g | 2% |
| Polyunsaturated Fat/Grasas poliinsaturadas 1 g | | Total Sugars/Azúcares totales 7 g | |
| Monounsaturated Fat/Grasas monoinsaturadas 1.5 g | | Incl. 4 g Added Sugars/Incl. 4 g de azúcares añadidos | 15% |
| **Cholesterol/Colesterol** 0 mg | 0% | **Protein/Proteína** 2 g | 16% |

---

[4] Maria J Romo-Palafox and JL Pomeranz et al., "Infant formula and toddler milk marketing and caregiver's provision to young children," Journal of Maternal and Child Nutrition, vol. 16,3 (2020): e12962. doi:10.1111/mcn.12962

21.   This is shown in the Ingredient List, as "Lactose," an added sugar.

INGREDIENTS: NONFAT MILK, LACTOSE, HIGH OLEIC SAFFLOWER OIL, SOY OIL, COCONUT OIL. LESS THAN 2% OF: SHORT-CHAIN FRUCTOOLIGOSACCHARIDES, CALCIUM PHOSPHATE, POTASSIUM HYDROXIDE, ASCORBIC ACID, POTASSIUM PHOSPHATE, CHOLINE CHLORIDE, SOY LECITHIN, C. COHNII OIL, FERROUS SULFATE, TAURINE, ASCORBYL PALMITATE, INOSITOL, MIXED TOCOPHEROLS, D-ALPHA-TOCOPHERYL ACETATE, ZINC SULFATE, NIACINAMIDE, POTASSIUM CITRATE, MANGANESE SULFATE, CALCIUM PANTOTHENATE, VITAMIN A PALMITATE, THIAMINE HYDROCHLORIDE, RIBOFLAVIN, PYRIDOXINE HYDROCHLORIDE, COPPER SULFATE, LUTEIN, BETA-CAROTENE, FOLIC ACID, VITAMIN D3, PHYLLOQUINONE, SODIUM SELENATE, BIOTIN, AND VITAMIN B12.

22.   Compared to cow's milk, recommended by global health authorities, the Similac Go & Grow Toddler Drink contains less protein, more sugar (carbohydrates) and more fat.[5]

**Nutritional Composition for 8 fl. oz.**

| Nutrient | Unit | Whole Cow's Milk | Similac Go & Grow Toddler Drink |
|----------|------|------------------|---------------------------------|
| Energy | cal | 149 | 140 |
| Protein | g | 7.69 | 4.00 |
| Total Fat | g | 7.98 | 8.0 |
| Carbohydrate | g | 12.8 | 14.0 |

23.   Transition formula such as Similac Go & Grow Toddler Drink is more than three times as expensive than whole cow's milk.

---

[5] Consensus Statement, Healthy Beverage Consumption in Early Childhood: Recommendations from Key National Health and Nutrition Organizations, Robert Wood Johnson Foundation, Healthy Eating Research, Sept. 2019, Appendix D.

24.     According to various websites, Similac Go & Grow Toddler Drink costs $25.99 for 30.8 ounces or 873 g.

25.     Based on the usage directions, a serving of two tablespoons makes four fluid ounces.

26.     Since the Product contains 68 servings, it will produce 272 ounces.

27.     According to the monthly Retail Milk Prices Report of the United States Department of Agriculture, whole milk in New York City cost $3.85 per gallon (128 ounces) in May 2020.[6]

| Price | Cow's (whole) | Similac Go & Grow Toddler Drink |
|---|---|---|
| Price ($/8 fl oz) | 0.24 | 0.76 |
| Price ($/gallon) | 3.85 | 12.23 |

28.     Public health research has shown that use of transition formulas such as Go & Grow Toddler Drink results in prolonged use of expensive, re-branded, infant formula instead of transitioning infants to cow's milk, water and other healthy foods.

29.     Moreover, Defendant markets Similac Go & Grow Toddler Drink as superior to cow's milk, in direct contravention of guidelines established by global health authorities for the nutritional needs of young children.

---

[6] Agriculture Marketing Service, Retail Milk Prices Report, May 2020.



provides key nutrients like Iron, Vitamins C & E, and DHA that milk alone can't provide

30.    The similar labeling of the Similac Go & Grow Toddler Drink and the Similac Infant Formula causes caregivers to make inaccurate and ill-advised nutritional purchasing decisions.

31.    For instance, a recent study of caregivers' understanding of transition formula labeling, like the Product here, concluded that 52% expected these products to "give toddlers nutrition that they wouldn't get from other sources."[7]

32.    70% of persons surveyed believed transition formulas like Similac Go & Grow Toddler Drink is a suitable drink for toddlers, despite expert recommendations that they offer "no unique nutritional value beyond what could be achieved through a nutritionally adequate diet; furthermore, they contribute added sugars to the diet."[8]

33.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

---

[7] Maria J Romo-Palafox and JL Pomeranz et al., Marketing claims on infant formula and toddler milk packages: What do caregivers think they mean? , UCONN Rudd Center for Food Policy & Obesity, September 2019.
[8] *Id*.

34.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

35.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

36.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

37.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $ 25.99 per 873 grams, excluding tax, compared to other similar products, which are nutritionally superior and the consensus recommendation for children in this age group, and represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

38.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

39.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

40.    Plaintiff Giovanna Smith is a citizen of New York.

41.    Defendant Abbott Laboratories Inc., is a Delaware corporation with a principal place of business in Abbott Park, Lake County, Illinois and is a citizen of Illinois.

42.    "Minimal diversity" exists because plaintiff Giovanna Smith and defendant are citizens of different states.

43.    Upon information and belief, sales of the Product in New York exceed $5 million

per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

44.    Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred here.

45.    Venue is further supported because many class members reside in this district.

Parties

46.    Plaintiff Giovanna Smith is a citizen of New York, Springfield Gardens, Queens County.

47.    Defendant Abbott Laboratories Inc. is a Delaware corporation with a principal place of business in Abbott Park, Illinois, Lake County and is a citizen of Illinois.

48.    During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within her district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

49.    Plaintiff purchased the Product on one or more occasions, including in or around August 2020, at Target, 519 Gateway Dr, Brooklyn, NY 11239 and other locations.

50.    Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use for those children in the applicable age-range to whom she was a caregiver, and believed the Product was necessary and/or valuable to the nutritional needs of said children.

51.    Plaintiff was deceived by and relied upon the Product's deceptive labeling.

52.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

53.    The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

11

54.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

Class Allegations

55.     The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

56.     Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

57.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

58.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

59.     Plaintiff is an adequate representatives because her interests do not conflict with other members.

60.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

61.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

62.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

63.     Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

64.     Plaintiff incorporates by reference all preceding paragraphs.

65.     Plaintiff and class members desired to purchase and consume products which were

as described and marketed by defendant and expected by reasonable consumers, given the product type.

66. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

67. Defendant misrepresented the substantive, nutritionally appropriate, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

68. Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

69. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

70. Plaintiff incorporates by reference all preceding paragraphs.

71. Defendant misrepresented the substantive, nutritionally appropriate, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

72. Defendant had a duty to disclose the truth about the Product and its nutritional appropriateness, or lack thereof.

73. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

74. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

75. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

76.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

77.    Plaintiff incorporates by reference all preceding paragraphs.

78.    The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that it possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

79.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

80.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

81.    Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

82.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

83.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

84.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

85.    Plaintiff incorporates by reference all preceding paragraphs.

86.    Defendant    misrepresented    the    substantive,    quality,    compositional    and/or

organoleptic attributes of the Product.

87.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

88.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

89.   Plaintiff incorporates by reference all preceding paragraphs.

90.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

  **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and

experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 22, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-05684
United States District Court
Eastern District of New York

Giovanna Smith, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Abbott Laboratories Inc.,

Defendant

## Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 22, 2020

/s/ Spencer Sheehan
Spencer Sheehan